FILED
OCT 2 6 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL J. BREGMAN )<br>10421 Stallworth Court )<br>Fairfax, VA  22032 )<br> )<br>           Plaintiff, )<br> )<br>v. )<br> )<br>STEVEN R. PERLES )<br>c/o Perles Law Firm, P.C. )<br>1146 19th Street )<br>5th Floor )<br>Washington, DC 20036 )<br> )<br>           and )<br> )<br>THOMAS FORTUNE FAY )<br>c/o Fay Kaplan Law, P.A. )<br>777 Sixth Street, NW )<br>Suite 410 )<br>Washington, DC 20001 )<br> )<br>           and )<br> )<br>PAUL W. SCHWARZ )<br>5336 Sugar Hill Drive )<br>Houston, TX 77056 )<br> )<br>           Defendants. ) | Case: 1:11-cv-01886<br>Assigned To : Roberts, Richard W.<br>Assign. Date : 10/26/2011<br>Description: Contract |

COMPLAINT FOR DECLARATORY JUDGMENT
AND BREACH OF CONTRACT

Comes now Plaintiff Michael J. Bregman, by and through his attorneys, Tamara L. Miller and Peter R. Masciola of MillerMasciola, complains and alleges as follows:

## SUMMARY OF ACTION

1. This is a civil action seeking declaratory and compensatory relief. Plaintiff Michael J. Bregman performed valuable personal services as a full time Consultant and In-House Investigator that benefitted the Defendants, and for which he was never paid. Plaintiff's valuable services were accepted and used by the Defendants and aided them in obtaining the settlement of an action pending in this Court until November 17, 2008, *Beecham, et al. v. Libya,* Civil No. 1:01CV02243 (ROBERTS), 2007 WL 1020810 (D.D.C. March 31, 2007).

2. On November 17, 2008, the settlement funds from the *Beecham* case were paid into and distributed through the LaBelle Discotheque Bombing Patriots Trust ("the Trust") to the *Beecham* plaintiffs, lawyers and creditors. The settlement funds paid in the *Beecham* case totaled One Hundred and Eleven Million Dollars ($111,000,000.00). The Defendants are attorneys who represented the *Beecham* plaintiffs, and also are the Trustees. A copy of the Trust Account Statement from custodian Bank of America, N.A., is attached hereto as Exhibit A.

3. On November 19, 2008, the Defendants entered into an Agreement wherein they set aside the sum of One Million, One Hundred Thousand Dollars ($1,100,000), pending resolution of the Plaintiff's breach of contract claims stated in the present action for his services on the *Beecham* case. A copy of the Agreement is attached hereto as Exhibit B.

4. Defendants disagree as to the value of Plaintiff Michael J. Bregman's services and/or the compensation that he was promised for the services that he performed, *inter alia*, on the *Beecham* case. This declaratory and compensatory relief action seeks to resolve that dispute.

## THE PARTIES

5. Plaintiff Michael J. Bregman is a citizen and resident of the Commonwealth of Virginia. He is a retired federal civil servant, having served with the Bureau of Alcohol, Tobacco and Firearms (ATF) for 32 years, and holding several high level positions including Special Agent in Charge of ATF's Washington DC Field Division, and Special Assistant to the Director of ATF. After his federal retirement, Plaintiff was employed full time beginning in January 2002 and at all times relevant to this action through June 2004 as a Consultant and In-House Investigator to defendant Steven R. Perles with offices at The Perles Law Firm in Washington, DC to assist, *inter alia*, in terrorism litigation for clients who had been the victims of terrorist attacks.

6. Defendant Steven R. Perles is an attorney licensed to practice in the District of Columbia. At all times relevant to this action through the present, he has regularly conducted business as a lawyer in the District of Columbia. He worked together with defendants Thomas Fortune Fay and Paul W. Schwarz in the representation of clients who had been the victims of terrorist attacks and was successful in obtaining payments relating to this terrorism litigation, including the settlement funds paid to the *Beecham* plaintiffs.

7. Defendant Thomas Fortune Fay is an attorney licensed to practice in the District of Columbia. At all times relevant to this action through the present, he has regularly conducted business as a lawyer in the District of Columbia. He worked together with defendants Steven R. Perles and Paul W. Schwarz in the representation of clients who had been the victims of terrorist attacks and was successful in obtaining payments relating to this terrorism litigation, including the settlement funds paid to the *Beecham* plaintiffs.

8. Defendant Paul W. Schwarz is an attorney licensed to practice law in the District of Columbia. He is a resident of Texas. At all times relevant to this action, he worked together with defendants Steven R. Perles and Thomas Fortune Fay in the representation of clients who had been the victims of terrorist attacks and was successful in obtaining payments relating to this terrorism litigation, including the settlement funds paid to the *Beecham* plaintiffs.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this claim, pursuant to 28 U.S.C. §1332, and the Declaratory Judgment Act, 28 U.S.C. §1221.

10. The plaintiff is a domiciliary and resident of the State of Virginia. Defendants Steven R. Perles and Thomas Fortune Fay are attorneys admitted to practice law and doing business in the District of Columbia, and defendant Paul W. Schwarz is an attorney admitted to practice law in the District of Columbia who currently resides in Texas. The amount in controversy, exclusive of interest and costs, exceeds Seventy Five Thousand Dollars ($75,000.00).

11. Venue before this Court is proper under 28 U.S.C. §1391(a)(2) because a substantial part of the events giving rise to the claim herein occurred in the District of Columbia within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

12. In October 2001, shortly after the terrorist attacks on 9/11/2001, defendant Steven R. Perles (hereafter "Mr. Perles") approached plaintiff Michael J. Bregman (hereafter "Mr. Bregman") about assisting Mr. Perles as a consultant to collect monies owed to the plaintiffs in *Jenco v. Islamic Republic of Iran*, United States District Court for the District of Columbia (2001), for the kidnapping, detention, and torture of their relative, Father Lawrence M. Jenco, by terrorists funded and controlled by the Iranian government.

13. Defendants Perles and Fay had been successful in obtaining a judgment for the *Jenco* plaintiffs for Three Hundred and Fourteen Million, Six Hundred and Forty Thousand Dollars ($314,640,000.00), and needed assistance in collecting the judgment proceeds from the Islamic Republic of Iran, which were being held by the United States Department of Treasury.

14. Plaintiff Bregman and Defendant Perles entered into an oral contract for Mr. Bregman's services to collect the judgment proceeds in the *Jenco* case, for which Mr. Bregman was to be paid Twenty Five Thousand Dollars ($25,000). When the judgment proceeds were disbursed to the *Jenco* plaintiffs, lawyers and creditors, Mr. Bregman was paid $25,000 for his services from the settlement funds in the *Jenco* case. Mr. Bregman also received one week's free use of a villa in St. Barts Island in the French West Indies owned by Defendant Fay's family.

15. Based on the success of Mr. Bregman's work in the *Jenco* case, Mr. Perles engaged Mr. Bregman to work full time on his other terrorism cases and international business development in January 2002. Mr. Bregman and Mr. Perles entered into an oral contract, which provided that Mr. Bregman would perform work for Mr. Perles as a Consultant and In-house Investigator. As a Consultant, Mr. Bregman agreed to assist Mr. Perles day-to-day with business development, strategy, security, and staff development. As an In-House Investigator, Mr. Bregman agreed to work on a variety of terrorism cases in which Mr. Perles, along with other attorneys including defendants Thomas Fortune Fay (hereafter "Mr. Fay") and Paul W. Schwarz (hereafter Mr. Schwarz), represented American citizens and/or their estates who had been victims of terrorist attacks sponsored by governments designated by the U. S. Department of State as the source of material assistance to acts of terrorism.

16. Concerning compensation for his full time services, Mr. Perles told Mr. Bregman that he would be paid a fee equal to a percentage of the amount of contingent fees received by the partnership. Over the course of his employment, Mr. Perles frequently commented to Mr. Bregman, "When I get paid, you get paid." Trusting Mr. Perles and his promises of future payment, Mr. Bregman began to work full time for Mr. Perles in January 2002.

17. Over time, during discussions between Mr. Perles, Mr. Fay, and Mr. Bregman, Mr. Perles appeared to change the terms of Mr. Bregman's compensation. Once during the summer of 2002 in Mr. Perles' office, Mr. Perles asked Mr. Bregman for his hours. In response, Mr. Bregman told Mr. Perles that he was

working a minimum of eight hours a day at Mr. Perles' law office, in the field, or from home doing research on his computer. Mr. Bregman also informed Mr. Perles that his hourly rate was Two Hundred and Fifty dollars ($250).

18. During a meeting attended by Mr. Bregman and Mr. Fay at Mr. Fay's office on July 29, 2003, the subject of Mr. Bregman's compensation was discussed. Mr. Fay commented that based on Mr. Bregman's hourly rate, Mr. Perles would owe Mr. Bregman one-half million dollars in fees and that Mr. Bregman should have a written contract for his services. Despite numerous requests and discussions between Mr. Bregman, Mr. Fay, and Mr. Perles, Mr. Perles refused to enter into a written contract with Mr. Bregman regarding his promised compensation for Mr. Bregman's consultant and in-house investigative services.

18. When Mr. Bregman was being considered for a political appointment to be the Director of ATF during summer 2003, Mr. Perles, Mr. Fay, and Mr. Bregman again discussed compensation for Mr. Bregman. Mr. Perles stated that he could "reconstruct Mr. Bregman's hours, which were significant." Mr. Perles never did so, however, nor did he offer at that time to pay Mr. Bregman for his full time consultant and in-house investigative services since January 2002.

19. With respect to the *Beecham* case, during a meeting on September 25, 2003, Mr. Perles agreed to pay Mr. Bregman a fee of One Hundred Thousand Dollars ($100,000.00) for his services and a bonus payment of One Million Dollars ($1,000,000). Mr. Perles informed Mr. Bregman that it might take some time, even years until he received these sums as compensation for his services.

20. Relying on the promises of Mr. Perles to be paid for his work, Mr. Bregman fully performed all of his obligations under the terms of their oral contract. Mr. Bregman performed a variety of tasks for Mr. Perles on a daily basis. He managed Mr. Perles' law office, trained his staff and two young attorneys, supervised their work, attended numerous daily meetings with Mr. Perles on multiple subjects, headed his commercial development business efforts, drafted plans for, traveled to, and attended numerous strategy and business meetings with potential clients, prepared interview questions and documents to be shared with members of Congress and political groups, conducted security assessments, and provided significant and substantial investigative assistance on the terrorism cases, including locating assets for compensating the terrorism victims.

21. On the *Beecham* case, Mr. Bregman also worked to help to establish Libya's responsibility for the LaBelle Discotheque bombing by securing investigative reports and evidence, and conducting extensive research into the type of explosives used in the bombing. Mr. Bregman used his professional contacts to lobby Congress on legislation favorable to the terrorism litigation, and facilitate communications between a member of Congress and the son of the Libyan leader to encourage settlement of the *Beecham* plaintiffs' claims.

22. Mr. Bregman was available at all hours of the day and night to both defendants Perles and Fay throughout his employment as a consultant for Mr. Perles, answering their telephone calls related to various terrorism cases that they were litigating, including the *Beecham* case. Mr. Fay was responsible primarily for the trial work and enforcement of any judgment. Mr. Perles was responsible primarily

for legislative work and legal research. Mr. Bregman was responsible for investigative work, logistical and other support to the litigation team, and has been credited for the payment of the *Beecham* plaintiffs' claims.

23. Mr. Bregman had no direct dealings with defendant Schwarz other than attending one meeting with him at Mr. Perles' office. Based on information and belief, Mr. Schwarz's communications were primarily with defendants Perles and Fay as co-counsel on the terrorism cases.

24. The named defendants collectively received payment of legal fees and expenses in the *Beecham* case totaling Thirty Five Million Nine Hundred Thousand Dollars ($35,900,000.00), and individually Eleven Million Nine Hundred and Sixty-Six Thousand Six Hundred and Sixty-Seven Dollars ($11,966,667.00) each, on November 17, 2008. See Trust Account Statement at Exhibit A.

25. To date, Mr. Bregman has not received any compensation for his services under the terms of his oral contract with Mr. Perles for his work on, to include, but not limited to, the *Beecham* case.

26. The defendants have retained One Million One Hundred Thousand Dollars ($1,100,000.00) in Trust from which Mr. Bregman will be paid the amount to which he is adjudged entitled to receive for his work on the *Beecham* case. See Trustee Agreement signed at Exhibit B.

27. Although Mr. Bregman's employment by Mr. Perles as a Consultant and In-House Investigator lasted for approximately two years and five months, from January 2002 until June 2004, the terms of Mr. Bregman's contract were never memorialized in writing. Mr. Perles dodged Mr. Bregman's requests to reduce in

writing the express promises made by Mr. Perles concerning compensation for his services. Mr. Bregman trusted to his detriment that Mr. Perles would compensate him as promised.

28. Over time during their employment relationship, Mr. Perles made it clear to Mr. Bregman that he would be paid for his hours of work plus a fee equal to a percentage of contingent fees received by the Defendants, in addition to bonuses. Mr. Perles treated Mr. Bregman like a partner and said that it should be "no problem" for him to make Two Hundred and Fifty Thousand Dollars ($250,000.00) per year not counting bonuses for settlement of terrorism litigation claims; and, these bonuses could be as high as One Million Dollars ($1,000,000.00) each.

29. One on occasion in the summer 2002, Mr. Perles told Mr. Bregman that he had paid an acquaintance of Mr. Bregman in Israel the sum of Two Hundred Thousand Dollars ($200,000.00) for limited but very significant work without submitting any accounting of hours to Mr. Perles. On another occasion, Mr. Perles said to his two investment counselors in Mr. Bregman's presence that Mr. Bregman would "need their services soon." Mr. Perles' final statement to Mr. Bregman concerning compensation was made during a terrorism litigation team meeting in the office of Ron Karp on May 18, 2004, attended by Mr. Fay and Shelly Kamins, in which he stated: "I owe [Mr. Bregman] a lot of money with a big bonus."

30. During the course of their conversations, Mr. Perles would occasionally discuss with Mr. Bregman the matter of Ms. Ann Marie Kagy, an attorney and former employee of Mr. Perles, who sued Mr. Perles in this Court for over a million dollars in fees, which Ms. Kagy felt that Mr. Perles owed her for services performed

in terrorism litigation, under circumstances similar to Mr. Bregman's. See *Perles v. Kagy*, 362 F. Supp. 2d 195 (D.D.C. 2005).

31. Between January 2002 and June 2004, Mr. Bregman performed approximately 4,480 hours of personal services under his contract with Mr. Perles. According to prevailing rates of compensation of Two Hundred and Fifty Dollars ($250.00) per hour for such services, and discussions between Mr. Bregman, Mr. Perles and Mr. Fay of the worth of Mr. Bregman's work, Mr. Bregman earned compensation from his employment by Mr. Perles of approximately One Million One Hundred and Twenty Thousand Dollars ($1,120,000).

32. Together with the offered and accepted compensation for his work on the *Beecham* case to include a fee of One Hundred Thousand Dollars ($100,000.00) and a bonus payment of One Million Dollars ($1,000,000), Mr. Bregman has sustained total damages of Two Million Two Hundred and Twenty Thousand Dollars ($2,220,000).

## COUNT I
## (Declaratory Relief)

33. Plaintiff Michael J. Bregman hereby incorporates all previous paragraphs as if restated herein.

34. There is a real and actual controversy between Plaintiff and Defendants regarding whether the settlement funds retained in the Trust for the *Beecham* case, pending resolution of Plaintiff's claims for payment of services stated in the present action, were earned by and promised to Plaintiff.

35. Plaintiff contends that for his work on the *Beecham* case he earned and was promised a fee of One Hundred Thousand Dollars ($100,000.00) in addition to a One Million Dollar ($1,000,000.00) bonus.

36. Plaintiff performed substantial and valuable consultant and in-house investigative services for Mr. Perles from January 2002 to June 2004. Plaintiff performed these consultant services on a full time basis with the expectation that he would be paid when Mr. Perles received a fee from any of the terrorism cases.

37. The consultant and in-house investigative services referenced herein were accepted by Mr. Perles under such circumstances that reasonably notified them that Plaintiff, in performing these full time services, expected to be compensated.

38. Plaintiff further contends that all three defendants have been unjustly enriched to his detriment. Defendants have received a substantial windfall and enrichment due to Plaintiff's efforts as a consultant in the *Beecham* case. Plaintiff is, therefore, entitled to the settlement funds retained in the Trust for the *Beecham* case, in which all three Defendants share an equal interest.

39. The unauthorized withholding of the Trust funds set aside for Plaintiff, and Defendants' knowledge of Plaintiff's ownership of the money on deposit in the Trust, have unjustly enriched the defendants and have made it inequitable for the defendants to retain these benefits without payment to Plaintiff of their value.

WHEREFORE, Plaintiff, requests a declaratory judgment determining that he is entitled to be paid by the defendants, jointly and severally, on this first cause of action, the sums of One Million One Hundred Thousand Dollars ($1,100,000.00) set aside in the Trust plus prejudgment interest from November 17, 2008, and the costs of this action, and such other relief as this Court finds just and proper.

## COUNT II
### (Breach of Oral Contract)

40. Plaintiff Michael J. Bregman hereby incorporates all previous paragraphs as if restated herein.

41. In refusing to pay Mr. Bregman what he is entitled to under the contract, and by dint of Mr. Bregman's full performance under the contract from January 2002 to June 2004, Mr. Perles has breached his fee agreement with Mr. Bregman by failing to honor the agreement by his words and actions.

42. As a result, Mr. Perles has proximately caused damages to Mr. Bregman of Two Million Two Hundred and Twenty Thousand Dollars ($2,220,000).

WHEREFORE, plaintiff Michael J. Bregman, requests judgment against defendant Steven R. Perles on this second cause of action, for all sums permissible for compensatory damages in the amount of Two Million Two Hundred and Twenty Thousand Dollars ($2,220,000), plus prejudgment interest from November 17, 2008, and the costs of this action, and such other relief as this Court finds just and proper.

## COUNT III
### (Breach of Implied Contract)

43. Plaintiff Michael J. Bregman hereby incorporates all previous paragraphs as if restated herein.

44. In the event that the Court concludes there is no express oral contract between Mr. Bregman and Mr. Perles, the parties by their conduct demonstrated mutual assent to the material terms of a contract whereby Mr. Bregman was to receive compensation for some of his work in the form of an hourly fee at the fair market value of Two Hundred and Fifty

Dollars ($250) per hour, and for his work on the *Beecham* case a fee of One Hundred Thousand Dollars ($100,000.00) in addition to a One Million Dollar ($1,000,000.00) bonus.

45. The facts as pled demonstrate that Mr. Bregman performed substantial and valuable consultant and in-house investigative services for Mr. Perles from January 2002 to June 2004. Mr. Bregman performed these consultant services on a full time basis with the expectation that he would be paid by Mr. Perles when Mr. Perles received a fee from any of the terrorism cases.

46. The consultant and in-house investigative services referenced herein were accepted by Mr. Perles under such circumstances that reasonably notified him that Mr. Bregman, in performing these services, expected to be compensated.

WHEREFORE, plaintiff Michael J. Bregman, requests judgment against defendant Steven R. Perles on this third cause of action, pursuant to the doctrine of *quantum meruit* for all sums permissible for compensatory damages in the amount of Two Million Two Hundred and Twenty Thousand Dollars ($2,220,000), plus prejudgment interest from November 17, 2008, and the costs of this action, and such other relief as this Court finds just and proper.

COUNT IV
(Quasi Contract: Unjust Enrichment)

47. Plaintiff Michael J. Bregman hereby incorporates all previous paragraphs as if restated herein.

48. The three named defendants have been unjustly enriched to the detriment of Mr. Bregman. The defendants have received a substantial windfall and enrichment due to the efforts of Mr. Bregman as a consultant in the *Beecham* case and he is, therefore,

entitled to an award in an amount commensurate with his work and the benefits gained by the defendants from these services under a quasi contract theory given due consideration to the fees paid in the *Beecham* case to the defendants.

49. The unauthorized withholding of funds, and the named defendants' knowledge of Mr. Bregman's ownership of the money on deposit in the Trust, have unjustly enriched the defendants and have made it inequitable for the defendants to retain these benefits without payment to plaintiff of their value.

WHEREFORE, plaintiff Michael J. Bregman requests judgment against the defendants, jointly and severally, on this fourth cause of action, pursuant to the doctrine of *quantum meruit* for all sums permissible for compensatory damages in the amount of One Million One Hundred Thousand Dollars ($1,100,000.00) plus prejudgment interest from November 17, 2008, and the costs of this action, and such other relief as this Court finds just and proper.

Dated: October 26, 2011

    Respectfully submitted,

    MILLERMASCIOLA, ATTORNEYS AT LAW

By: _____
    TAMARA L. MILLER (D.C. Bar # 435156)
    PETER R. MASCIOLA (D.C. Bar #458240)
    1050 17th Street, N.W., Suite 1250
    Washington, D.C. 20036
    Phone: (202) 223-8181
    Fax: (202) 318-0559
    Tamara.Miller@MillerMasciola.com