**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL J. BREGMAN**, <br><br> Plaintiff, <br><br> v. <br><br> **STEVEN R. PERLES, et al.,** <br><br> Defendants. | Civil Action No. 11-cv-1886 (RLW) |

**MEMORANDUM OPINION**

Plaintiff Michael J. Bregman ("Bregman") has sued Defendant Steven R. Perles ("Perles") for Declaratory Relief (Count I), Breach of Express Contract (Count II), Breach of Implied Contract (Count III), and Unjust Enrichment (Count IV). Bregman also brings Counts I and IV against Defendants Thomas Fortune Fay ("Fay") and Paul W. Schwarz ("Schwarz"). Before the Court are Defendants' Motions to Dismiss (Dkt. Nos. 5, 8, & 11). For purposes of this ruling, the Court will assume that the reader is familiar with the factual assertions and arguments made by the parties, and will not recite all of them again here. For the reasons set forth below, Fay and Schwarz' motions are **GRANTED** and Perles' motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

**FACTUAL SUMMARY**

Bregman, a retired agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, seeks to recover compensation for services that he allegedly provided to Defendants, who are all lawyers that had been working together as co-counsel on behalf of victims of terrorist acts. See

---

[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

Complaint ("Compl."), Dkt. No. 1, at ¶¶ 5-8.  Bregman allegedly worked for Perles from January 2002 through June 2004 in connection with Beecham, et al v. Libya, No. 1-01-cv-2243, 2007 WL 1020810 (D.D.C. March 31, 2007) and other terrorism cases.  (Compl. ¶¶ 1, 5, 15). Bregman asserts that Perles promised him compensation of $250 per hour, as well as a fee of $100,000, and a bonus payment of $1,000,000 for his work on the Beecham case.  (Compl. ¶¶ 16-19).  Despite Bregman's repeated requests, Perles refused to memorialize Bregman's alleged compensation agreements in writing.  (Compl. ¶¶ 17-18, 27).  Bregman alleges that, based on Perles' promises, he performed a wide range of tasks, including lobbying Congress, training Perles' staff attorneys, traveling to and attending meetings, and serving as consultant and in-house investigator to Perles.  (Compl. ¶¶ 20-22, 27).

Bregman alleges that, under his hourly contract with Perles, he performed a total of approximately 4,480 hours of services, which at $250 per hour, resulted in $1,120,000 of unpaid hourly fees.  (Id. ¶¶ 25, 31).  Bregman alleges that he was also never paid the promised fee of $1,100,000 for his work in the Beecham litigation, resulting in total damages of $2,220,000. (Id. ¶¶ 31-32).

## ANALYSIS

### A. Standard of Review

Defendants have moved to dismiss under Rule 12(b)(6), raising, among other things, the affirmative defense of statute of limitations.  Defendants also claim that Bregman has failed to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In evaluating a Rule 12(b)(6) motion, the court construes the complaint liberally in the

plaintiff's favor and grants him all reasonable inferences. See Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003). Despite the positive inferences granted in considering a motion to dismiss, a complaint must sufficiently "give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal citations omitted). Although the complaint does not require detailed factual allegations, it must provide the grounds for a plaintiff's prayer for relief with "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id.

A statute of limitations defense is viable "when the facts that give rise to the defense are clear from the face of the complaint." Adams v. District of Columbia, 740 F. Supp. 2d 173, 179 (D.D.C. 2010) (citing Smith–Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998)). A court may dismiss based on a statute of limitations defense if "'no reasonable person could disagree on the date on which the cause of action accrued.'" Lewis v. Bayh, 577 F. Supp. 2d 47, 51 (D.D.C. 2008) (quoting Smith v. Brown & Williamson Tobacco Corp., 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998)).

On a 12(b)(6) motion to dismiss, the Court may only consider facts alleged in the complaint, documents annexed to or incorporated by reference in the complaint, and matters of which the court may take judicial notice. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997). Bregman and Defendants have each attached exhibits to their submissions, inviting this Court to consider them in determining whether the statute of limitations has run. The documents attached to the parties' briefs collectively make up a chain of correspondence between counsel leading up to this lawsuit. These letters, which reflect Bregman's demands for compensation and Defendants' responses, have formed the basis for the parties' factual arguments in both their briefs and at oral argument. See, e.g., Dkt. No. 6 at 6;

3

No. 7 at 6, No. 8 at 5-9, No. 10 at 6-9; No. 11-1 at 3. For example, as an exhibit to the Complaint, Bregman attached a November 19, 2008 agreement between Defendants in which they establish a trust account for the $1,100,000 in fees that Bregman had demanded from the Beecham settlement. (Compl. at Ex. B). The agreement references the "allegations set forth in the letter of September 9, 2008" from Bregman's counsel. (Id.). Although Bregman failed to attach his September 9, 2008 letter to his Complaint, he conceded that at oral argument that this Court could consider that letter in deciding these motions to dismiss.[2]

Although Bregman generally argues that the Court should not consider documents outside the Complaint, he does not specifically object to Defendants' reliance on these exhibits, and in fact relies on several of them extensively in making his own arguments. In attaching their own respective letters they wish the Court to consider, both Bregman and Perles expressly rely on Hinton v. Corrections Corp. of America, 624 F. Supp. 2d 45, 47 (D.D.C. 2009), for the proposition that this Court can consider those documents in considering these motions to dismiss. (Dkt. No. 7 at 6, n.4; Dkt. No. 8 at 6, n.1). In doing so, Bregman concedes that the correspondence may be considered without converting this case to a motion for summary judgment because the letters are "matters upon which the plaintiff's complaint necessarily relies.'" Hinton, 624 F. Supp. 2d at 47 (internal citations and quotations omitted); see also Hollis v. U.S. Dept. of Army, 856 F.2d 1541, 1544 (D.C. Cir. 1988) (affirming District Court's reliance on documents attached to defendant's Rule 12(b)(6) motion to dismiss where, among other things, there was "substantial agreement" between the parties as to the facts underlying the District Court's decision and plaintiff's opposition to defendant's motion to dismiss relied on

---

[2] Perles attached the September 9, 2008 letter to his motion to dismiss. (Dkt. No. 8-4).

some of the same factual materials outside the complaint). As the United States Court of Appeals for the Second Circuit has noted:

> A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since, . . . the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason -- requiring notice so that the party against whom the motion to dismiss is made may respond -- that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). None of the parties dispute the authenticity of the letters upon which the other parties rely or contest that they were not on notice of them. Given this, the Court will consider letters attached to the parties' briefs in deciding the present motions.

    **B.    Counts II and III: Breach of Contract Claims Against Perles**

        **1. Statute of Limitations**

Although the parties agree that the applicable statutes of limitations for Bregman's breach of contract and unjust enrichment claims are three years under D.C. Code §§ 12-301(7)-(8), the parties disagree on when those claims accrued. Bregman filed this suit on October 26, 2011. Accordingly, if the statute of limitations on his claims began to run before October 26, 2008, his claims are time barred. Bregman argues that, despite the fact that he stopped working for Perles in June 2004, his contract claims against Perles did not begin to accrue at the earliest until November 19, 2008, when Defendants received the settlement funds from the Beecham litigation and refused to pay Bregman. (Dkt. No. 10 at 9). Bregman's theory is that his breach of contract claims accrue and are premised on Perles' "'unequivocal' refusal to pay his repeated demands for compensation for his services rendered during the period of January 2002 – June 2004."

(Dkt. No. 10 at 7). According to Bregman, his breach of contract claims actually accrued on March 12, 2009, when the parties concluded their discussions to attempt to settle the matter. Perles, on the other hand, argues that the statute of limitations began to run as early as 2005 or 2006 when Bregman's counsel began demanding payment from Perles. Perles argues that, at the very latest, Bregman's claims began to accrue on September 25, 2008, when counsel for Perles sent a letter rejecting Bregman's claims for compensation. (Dkt. No. 8-1 at 5).

The correspondence between the parties reflects that Bregman began making demands for compensation in 2005. (Dkt. No. 10 at Ex. B). On March 3, 2005, Bregman's counsel wrote Perles and asked to open a dialogue regarding a "resolution of compensation claims" which included hourly wages, contingent fees, and other work. (Id.). On November 17, 2006, Bregman's counsel sent a follow-up letter to Perles, demanding payment of his hourly work by January 1, 2007 or "when the LaBelle Disco settlement funds are distributed, whichever occurs earlier." (Dkt. No. 8-3). Having failed to receive any compensation, Bregman's counsel wrote to all three Defendants on September 9, 2008, demanding that Bregman be paid $1.1 million from the contingency fee paid to Defendants in the Beecham litigation. (Dkt. No. 8-4). Bregman's counsel advised Defendants to consider the letter a lien on the total fees paid to Defendants from the Beecham settlement. Id. On September 25, 2008, counsel for Perles responded to Bregman, stating:

> [t]here is no basis whatsoever for Mr. Bregman's claim to any of the settlement proceeds from the LaBelle case. . . . First, your letter indicates that Mr. Bregman was retained by Mr. Perles in 2001 to assist with the LaBelle case and other matters, and that Mr. Perles agreed to pay Mr. Bregman $250.00/hour plus a 'success fee' of $1,000,000. Mr. Perles did not agree to any such compensation structure, and we are not aware of any written agreement between the parties reflecting such an arrangement. Surely if Mr. Perles had agreed to provide a $1,000,000 'success fee' to Mr. Bregman, this would have been documented in writing among the parties. If you have any such agreement in your possession, please provide a copy to me immediately.

6

\* \* \*

> Mr. Perles is shocked that Mr. Bregman would assert a claim for $1,100,000, without providing one shred of documentation to support his claim. The plain and simple fact is that Mr. Bregman performed essentially no work on the LaBelle case, and he now seeks to extort money from Mr. Perles and his co-counsel, and, ultimately, the individual LaBelle victims and their Trust. Mr. Bregman should be aware that if he insists on pursing his frivolous claim in court, Mr. Perles will fully defend the bad faith claim, and will seek appropriate sanctions.
>
> Also, please be aware that I have spoken with Col. Paul Schwarz, who has been intimately involved in the LaBelle case since before the filing of the case, and he confirmed that Mr. Bregman performed no work in connection with the LaBelle case. . . . Like Mr. Perles, Col. Schwarz deems Mr. Bregman's claim as entirely frivolous, and he has advised me that should Mr. Bregman insist on pursuing his claim, Col. Schwarz will vigorously defend the claim to include a potential counterclaim for fraud against Mr. Bregman and any other individuals involved in pursuing Mr. Bregman's bad faith claim.

(Dkt. No. 8-5).

At oral argument, counsel for Bregman made the significant concession that Bregman had a claim as of September 9, 2008 when he asserted a lien against the Beecham fees and that he could have filed suit even prior to that time. There is no question that, as of September 25, 2008, when Bregman knew of his injury, he could have sued to enforce his rights under the alleged contract with Perles. See Medhin v. Hailu, 26 A.3d 307, 311 (D.C. 2011) (holding that the statute of limitations in a brokerage agreement began at the moment the aggrieved party was informed he would not be paid) (citations omitted); see also LoPiccolo v. American University, 840 F. Supp. 2d 71, 78 (D.D.C. 2012) (holding that, in a breach of contract case, the cause of action accrued when the plaintiff was made aware that the "other [party] is refusing to perform . . . .").

Viewing the facts in the light most favorable to Bregman, however, there is a question as to whether Perles' obligation to perform (i.e., compensate Bregman) under the alleged contract

7

arose prior to November 17, 2008, when Perles received the Beecham funds. Bregman alleges that Perles promised him a "fee equal to a percentage of the amount of contingent fees received by the partnership." (Compl. ¶ 16). Moreover, Perles promised Bregman that "[w]hen I get paid, you get paid." (Id.). Finally, Perles allegedly informed Bregman that it "might take some time, even years" before Bregman would be compensated. (Compl. ¶ 19). Taking those allegations as true at this stage, the earliest that Bregman's contract claims could accrue would be November 17, 2008, the day when Perles was paid. See Franconia Assoc. v. United States, 536 U.S. 129, 142-44 (2002) (noting that, where a promiser has repudiated a contract prior to the time fixed for performance and the injured party elects to await performance, the cause of action accrues from the time fixed for performance rather than the earlier date of repudiation."); see also Restatement (First) of Contracts § 322 (1932). Accordingly, Perles' Motion to dismiss Counts II and III based on statute of limitations is denied.

### 2. Failure to State a Claim

Perles also moves to dismiss Counts II and III on the basis that Bregman has failed to state a claim for breach of express or implied contract. In the District of Columbia, "[t]o prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009). Under F.R.C.P. Rule 8(a), to state a claim for breach of contract, a complaint must allege that a contract existed, the plaintiff complied with it, the defendant breached the contract, and the plaintiff suffered damages. See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1235 (3d ed. 2004). Though a contract claim need not provide all details of the contract, it must at the very least put the defendant on notice of the nature of the claim, and show

8

the court what obligations it should enforce.  See id.; see also Bond v. U.S. Dept. of Justice, 828 F. Supp. 2d 60, 79 (D.D.C. 2011).

An implied contract is a "true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." Vereen v. Clayborne, 623 A.2d 1190, 1193 (D.C. 1993) (internal citations and quotation marks omitted).  To recover under an implied contract, a plaintiff must show that: "1) valuable services were rendered; 2) for the person sought to be charged; 3) which services were accepted by the person sought to be charged, used and enjoyed by him or her; and 4) under such circumstances as reasonably notified the person sought to be charged that the [person rendering the services] expected to be paid by him or her." Id.  (internal citations omitted).

Viewing all facts and reasonable inferences in Bregman's favor, the Court cannot dismiss Counts II and III at this time.  Bregman's allegations sufficiently state claims against Perles for breach of express or, in the alternative, implied contract.  Although Bregman's allegations are at times inconsistent and may ultimately be unsubstantiated, he does allege, among other things, that Perles promised him compensation for his investigative work, that Bregman performed that work, and that Perles failed to compensate him.  Perles allegedly told Bregman that Bregman would be paid a "fee equal to a percentage of the amount of contingent fees received by the partnership" and was told over the course of his employment that when Perles would get paid, Bregman would get paid.  (Compl. ¶ 16).  Bregman claims he told Perles that his hourly fee was $250.  Although Bregman does not allege that Perles expressly agreed to that hourly rate, Perles allegedly continued to use Bregman's services for approximately two years after that discussion. Moreover, in 2003, Perles acknowledged during a discussion of Bregman's compensation that

Bregman's hours were "significant" and in 2004 allegedly admitted that "I owe [Mr. Bregman] a lot of money with a big bonus." (Id. at ¶¶ 18, 29). Although Bregman will be required to clarify and substantiate his claims on summary judgment or trial, he has met what is required of him during the pleading stage. Perles' motion is denied.

### C. Count IV: Unjust Enrichment Against All Defendants

All three Defendants have moved to dismiss Bregman's unjust enrichment claims based on statute of limitations. Defendants argue that Bregman's unjust enrichment claims accrued no later than September 25, 2008, when they rejected Bregman's claims for compensation. Bregman argues that the statute of limitations began to run at the same time that his breach of contract claim began to run—in March 2009 when, according to Bregman, his negotiations with Defendants about his compensation concluded. (Dkt. No. 10 at 7-8). Based on a review of the allegations in the Complaint and the correspondence between the parties, it is clear that Bregman's claims for unjust enrichment are time barred.

A claim for "unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." News World Communications, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005) (citing 4934, Inc. v. Dist. of Columbia Dept. of Employment Services, 605 A.2d 50, 55-56 (D.C. 1992)). To recover on an unjust enrichment claim, the plaintiff must show that the defendant was "'unjustly enriched at his expense and that the circumstances were such that in good conscience [the defendant] should make restitution.'" Thompson, 878 A.2d at 1222 (quoting Vereen, 623 A.2d at 1194).

Unlike a claim for breach of contract, the statute of limitations on a claim for unjust enrichment "'only accrues . . . when the enrichment becomes unjust; the statute of limitations

10

starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution.'" Vila v. Inter-American Investment Corp., 570 F.3d 274, 284 (D.C. Cir. 2009) (quoting Thompsen, 878 A.2d at 1223). In Thompsen, the plaintiff proposed a magazine idea to *The Washington Times* and made efforts to work up a marketing strategy and design for the proposed magazine. Although *The Times* at first suggested remuneration for Thompsen's idea, the newspaper later refused to compensate her for her work. The D.C. Court of Appeals held that the statute of limitations on Thompsen's unjust enrichment claim began to run when "the Times, having encouraged Ms. Thompsen's efforts, having received the benefit of her work and ideas, having expressed the intention to use her work product, and having already begun to utilize it, nevertheless informed her that she would not be compensated." Thompsen, 878 A.2d at 1222. The court expressly rejected the notion that the statute did not begin to run until the newspaper actually implemented Thompsen's ideas. See id. at 1223-26 (relying primarily on Baer v. Chase, 392 F.3d 609 (3d Cir. 2004) for proposition that statute of limitations for the unjust enrichment claim of plaintiff that had provided information for development of television show began to run at plaintiff's last rendition of services and not when television show first aired).

In this case, the Complaint is clear that the last service Bregman rendered was in June of 2004. (Compl. ¶ 5). As detailed above, Bregman began making unsuccessful demands for compensation in 2005 and 2006. In those letters, Bregman's demands for compensation detailed both the amount of work he had done, as well as the compensation to which he felt entitled. On September 9, 2008, Bregman renewed his demands and asserted a lien against any funds from the Beecham litigation. On September 25, 2008, Perles responded with a clear and unequivocal refusal to compensate Bregman, calling his claims "frivolous" and stating, among other things, that: 1) Bregman did no work on the Beecham case and there was "no basis whatsoever" for

11

Bregman's claims to any of the Beecham settlement; 2) Perles did not agree to any hourly compensation structure; 3) Bregman was seeking to "extort" money from Defendants; and 4) that Perles and Schwarz would both "fully" and "vigorously" defend Bregman's claims in court and seek sanctions and a counterclaim for fraud against Bregman. (Dkt. No. 8-4).

Even viewing the facts in the light most favorable to Bregman and drawing all reasonable inferences in Bregman's favor, it is clear that Bregman's unjust enrichment claim began to accrue no later than September 25, 2008.[3] The September 25, 2008 letter was an unequivocal rejection of Bregman's claims and not, as Bregman contends, an invitation to engage in further negotiations. By September 25, 2008, Bregman had performed his last service to Perles, Perles and Schwarz unequivocally declined to compensate Bregman, and Perles had used Bregman's services for his benefit. Accordingly, Bregman's unjust enrichment claims could not have accrued any later than September 25, 2008 and, as such, are time barred. See Thompsen, 878 A.2d at 1225.

### D. Count I: Declaratory Judgment

The Court will exercise its discretion to dismiss Bregman's claims for declaratory judgment relief. See 28 U.S.C. § 2201(a) (the court "*may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added). Bregman's claim

---

[3] The September 25, 2008 letter was sent by Perles and also communicated Schwarz' position. The Complaint does not include any allegations that would support any later date for the accrual of the causes of action against Schwarz or Fay. With respect to Schwarz, Bregman admits that he "had no direct dealings with [him] other than attending one meeting with him at Mr. Perles' office. Based on information and belief, Mr. Schwarz's communications were primarily with defendants Perles and Fay as co-counsel on the terrorism cases." (Compl. ¶ 23). As for Fay, Bregman's only specific allegations are limited to the fact that he answered telephones and was available to Fay throughout Bregman's employment *for Perles*. (Compl. ¶¶ 22-23). There is no other specific allegation that Bregman was employed by or worked with Fay or Schwarz in any capacity beyond Bregman's general role in assisting with the Beecham litigation.

for declaratory relief is redundant to his contractual and equitable claims.  When closely examined, Bregman's claims for declaratory judgment are "really just components of a claim for breach of contract" and unjust enrichment.  <u>Gibson v. Liberty Mut. Group, Inc.</u>, 778 F. Supp. 2d 75, 79-80 (D.D.C. 2011).  Count I "thus add[s] nothing" to Bregman's suit and will be dismissed.  <u>Id.</u>

## **CONCLUSION**

For the foregoing reasons, Fay and Schwarz' motions to dismiss are **GRANTED** and Perles' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  An Order accompanies this Memorandum.


Date:   August 17, 2012

ROBERT L. WILKINS
United States District Judge