# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 19, 2014         Decided April 1, 2014

No. 12-7091

MICHAEL J. BREGMAN,
APPELLANT

v.

STEVEN R. PERLES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01886)

*Tamara L. Miller* argued the cause for appellant. *Peter R. Masciola* was on brief.

*Caroline M. Mew* argued the cause for the appellees. *Mark Emery* and *Annie P. Kaplan* were on brief. *Geoffrey T. Hervey* entered an appearance.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In 2008, Libya paid $111 million to the victims of the 1986 LaBelle discotheque bombing in Berlin in order to settle a lawsuit (the *Beecham* case) alleging Libya's responsibility for the

2

bombing. The victims' lawyers—Steven Perles, Thomas Fay and Paul Schwarz—received nearly $36 million for their efforts. Appellant Michael Bregman, a retired federal agent who allegedly provided investigative and other services to the lawyers in the *Beecham* litigation, was paid nothing. Seeking his piece of the pie, Bregman sued the lawyers on October 26, 2011. The district court found that Bregman's unjust enrichment claim accrued on September 25, 2008, when Perles's lawyer sent him a letter refusing his request for compensation. It therefore dismissed the claim as untimely under the applicable three-year statute of limitations. Bregman appeals, arguing that his claim accrued no earlier than November 17, 2008, when the defendant lawyers received payment from the *Beecham* settlement. We agree with the district court and therefore affirm.

I

Bregman worked for the United States Bureau of Alcohol, Tobacco and Firearms (ATF) for 32 years.[1] In October 2001, Perles approached Bregman, who was by then retired, to ask for his help in collecting a judgment Perles and Fay had obtained for their clients in a suit against Iran. Bregman agreed and was paid $25,000 for his services after the judgment proceeds were disbursed.

In January 2002, based on the success of that engagement, Perles engaged Bregman to work full-time on his other international terrorism cases. Bregman assisted Perles with business development, strategy, security and staff training.

---

[1] On a motion to dismiss, the facts alleged in the complaint are taken as true and all reasonable inferences therefrom are drawn in the plaintiff's favor. *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014).

3

He also served as an in-house investigator for a variety of cases in which Perles, Fay and Schwarz represented victims of state-sponsored terrorist attacks. Perles initially told Bregman that he would be paid a percentage of any contingent fees recovered. Over the course of Bregman's employment, however, Perles appeared to change the terms of his compensation, requesting Bregman's hourly rate and the number of hours he had worked. In a September 2003 meeting, Perles agreed to pay Bregman $100,000 for his services relating to the *Beecham* case. Perles also promised Bregman a $1 million bonus if the plaintiffs were successful in collecting on the *Beecham* judgment. Despite Bregman's numerous requests, the parties never entered into a written agreement regarding his services and compensation. Between January 2002 and June 2004, Bregman claims to have performed 4,480 hours of services for Perles and his co-counsel, which, at Bregman's claimed rate of $250 per hour, amounts to $1,120,000 in unpaid services.

In August 2008, the United States and Libya reached an agreement providing for the settlement of terrorism-related claims of U.S. nationals against Libya. *See* Libyan Claims Resolution Act, Pub. L. No. 110-301, 122 Stat. 2999 (Aug. 4, 2008); *see also* Exec. Order No. 13477, 73 Fed. Reg. 65965 (Oct. 31, 2008). On September 8, 2008, Bregman's lawyer sent a letter to Perles, Fay and Schwarz requesting confirmation that Bregman would be paid $1.1 million out of whatever contingency fee they recovered from the *Beecham* settlement. The letter purported to serve as a lien on the total fee collected by the lawyers from the settlement.

On September 25, 2008, Perles's lawyer responded by letter. *See* Joint Appendix (JA) 48–49 (the "9/25 Letter"). Perles's lawyer did not mince words:

4

> I am writing in response to your letter . . . regarding the claim asserted by Michael Bregman in connection with the LaBelle [discotheque] case. As set forth below, there is no basis whatsoever for Mr. Bregman's claim to any of the settlement proceeds from the LaBelle case.

9/25 Letter 1. The letter denied that Perles had ever agreed to the alleged compensation structure. *Id.* It stated that "Mr. Perles is not aware of any work performed by Mr. Bregman in connection with the LaBelle case (other than perhaps one phone call made by Mr. Bregman to obtain a copy of the police report)" and requested that Bregman produce "documentation reflecting the work that [he] claims to have performed in connection with the LaBelle case." *Id.* It continued:

> Mr. Perles is shocked that Mr. Bregman would assert a claim for $1,100,000, without providing one shred of documentation to support his claim. The plain and simple fact is that Mr. Bregman performed essentially no work on the LaBelle case, and he now seeks to extort money from Mr. Perles and his co-counsel, and, ultimately, the individual LaBelle victims and their Trust. Mr. Bregman should be aware that if he insists on pursuing his frivolous claim in court, Mr. Perles will fully defend the bad faith claim, and will seek appropriate sanctions.

*Id.* at 2. The letter represented that Schwarz, Perles's colleague, also "deems Mr. Bregman's claim as entirely frivolous" and asserted that Fay, Perles's other colleague, had never reported to Perles or Schwarz that Bregman had performed any work for him. *Id.* Finally, the letter concluded, "please be aware that no funds have been received

by Mr. Perles in connection with the LaBelle case, and it is unclear at this time when such funds may come in." *Id.*

On November 17, 2008, those funds did come in. The *Beecham* plaintiffs received $111 million, from which Perles, Fay and Schwarz received $35.9 million in fees and expenses. Bregman was not paid. He filed suit on October 26, 2011, alleging two contract claims against Perles, an unjust enrichment claim against all three lawyers and a claim for declaratory relief.

The district court denied Perles's motion to dismiss the contract claims but dismissed the claim for declaratory relief. Relevant here, the district court also dismissed Bregman's unjustment enrichment claim as barred by the applicable statute of limitations. Bregman filed a notice of appeal and, at the parties' joint request, the district court entered final judgment on the unjust enrichment claim.

## II

We review *de novo* the district court's dismissal, accepting the factual allegations in the complaint as true and granting Bregman the benefit of all reasonable inferences derived from the facts alleged. *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 284 (D.C. Cir. 2009). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 603 (D.C. Cir. 2013) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam)).

"Under District of Columbia law, which applies here, unjust enrichment claims are subject to a three year statute of limitations." *Vila*, 570 F.3d at 283 (citing *News World*

6

*Commc'ns v. Thompsen*, 878 A.2d 1218, 1221 (D.C. 2005)). "[T]he statute of limitations begins to run when a claim accrues, and . . . a cause of action accrues when its elements are present, so that the plaintiff could maintain a successful suit." *Thompsen*, 878 A.2d at 1222; *see also Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc) ("Where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs."). "Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008) (quoting *Thompsen*, 878 A.2d at 1222); *see also Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62–64 (D.C. 2005). Thus, "a claim for unjust enrichment accrues only when the enrichment actually becomes unlawful, *i.e.*, where there has been a wrongful act giving rise to a duty of restitution." *Thompsen*, 878 A.2d at 1225 (alteration, citation and quotation marks omitted); *accord id.* at 1219 ("[T]he statute of limitations begins to run when the plaintiff's last service has been rendered and compensation has been wrongfully withheld.").

In *Thompsen*, the District of Columbia Court of Appeals addressed, as a matter of first impression, the point at which the statute of limitations begins to run on an unjust enrichment claim. There, the plaintiff had pitched an idea to The Washington Times (Times) newspaper about publishing a family magazine for the Times. Having been told by the Times that she would be compensated, the plaintiff did substantial work developing the project, only to be told by the Times months later that there had been a change of heart: The Times was developing a similar project without her and did not plan to pay her for her previous efforts. Two years later, the

7

Times published the first edition of its magazine, "Family Times." *See id.* at 1220. The D.C. Superior Court found the plaintiff's unjust enrichment claim did not accrue until the Times published its first edition of the magazine, reasoning the claim could not accrue until then because "Defendant would not have been unjustly enriched if it had never used Plaintiff's ideas." *Id.* at 1221. The District of Columbia Court of Appeals disagreed. By providing the Times with the idea for the family magazine and doing some of the groundwork to develop it, the plaintiff *had* conferred something of value on the Times. *Id.* at 1225. Accordingly, the Times's retention of the benefit became unjust—and the plaintiff's claim accrued—when the Times told her she would not be paid, not on the later date when it published the magazine. *Id.* at 1226.

We applied these principles in *Vila v. Inter-American Investment Corp.*, 570 F.3d 274, 284 (D.C. Cir. 2009). There, the plaintiff was an independent consultant who worked on several projects for the Inter-American Investment Corporation (IIC). The plaintiff performed services for the IIC with the expectation that he would be paid but he was eventually told that in fact he would not be paid. *See id.* at 276–77. As in *Thompsen*, the plaintiff's claim accrued when the enrichment became unjust—*i.e.*, when the IIC, having retained the benefit of the plaintiff's services, refused payment. In *Vila*, however, there were at least two possible dates of refusal. *Id.* at 284. On August 4, 2003, an IIC employee told the plaintiff he would not be compensated. Undeterred, the plaintiff protested to the employee's supervisors. Eventually, on November 4, 2003, the plaintiff was told unequivocally that he would not be paid. We held that, granting the plaintiff the benefit of all reasonable inferences arising from the allegations in the complaint, the plaintiff's claim accrued on November 4, 2003, because on that date "the first unequivocal refusal for all his work that year [occurred]." *Id.* at 284.

8

Here, the three lawyers were enriched by the services that Bregman allegedly performed for them between January 2002 and June 2004. Bregman's claim did not accrue, however, until that enrichment became unjust: when they unequivocally refused to compensate him for the services he had performed. *See Vila*, 570 F.3d at 284; *Thompsen*, 878 A.2d at 1225–26. Applying these principles, the district court held that Bregman's claim accrued on September 25, 2008, because Perles's lawyer's letter of that date was an unequivocal refusal of payment. We agree. The letter informed Bregman, in no uncertain terms, that the three lawyers[2] were not going to compensate him for his services. It described Bregman's claims as having "no basis whatsoever" and an "entirely frivolous" and sanctionable attempt to "extort money from Mr. Perles and his co-counsel." 9/25 Letter 1–2. It denied that Perles ever agreed to compensate Bregman and claimed that Bregman "performed essentially no work" on their behalf. *Id.* at 2. To be sure, the letter's aggressive tone suggests a bit of posturing by Perles and his co-counsel. But it nevertheless informed Bregman that he would not be paid for his services;

---

[2] Bregman contends that the letter speaks only for Perles, not Fay and Schwarz, because it is signed by Perles's lawyer. But Bregman took the opposite position below: "[T]his letter by [Perles's lawyer] speaks for all three of these lawyers. . . . So we have this one lawyer who is speaking on behalf or representing the interests of Mr. Fay, Mr. Schwarz, as well as Mr. Perles . . . ." JA 109 (Transcript of 5/29/12 Motion Hearing). Any alleged error in attributing the letter's refusal to all three lawyers was therefore invited: "That one will not be heard to complain of receiving what one asked for has a long tradition both in jurisprudence, as in the doctrine of estoppel, and in common wisdom." *United States v. Harrison*, 103 F.3d 986, 992 (D.C. Cir. 1997) (citing Seneca, *Epistles*, 95, 1); *see also United States v. Warren*, 42 F.3d 647, 658 (D.C. Cir. 1994).

9

therefore, as of that date, the elements of an unjustment enrichment claim were met and the statute of limitations began to run.

Bregman contends that, drawing all reasonable inferences in his favor, the district court should have found that the letter was not a refusal of payment but rather an invitation to further negotiations. He notes that the letter is captioned "for settlement purposes only" and that at one point it requested that Bregman provide documentation of any work he performed in connection with the LaBelle case. We think the caption adds little to the analysis and, read in context, the request for documentation cannot reasonably be construed as an invitation to negotiate—especially considering that in the previous paragraph the letter requested a copy of any written agreement between the parties, which agreement all knew to be non-existent. See 9/25 Letter 1. Moreover, Bregman conceded below that the 9/25 Letter "certainly rejected in writing Mr. Bregman's demands for compensation for his services." JA 56. Instead of pressing the negotiations point, he argued that the statute of limitations did not begin to run until the lawyers received payment. We therefore turn to that contention.

Bregman argues that "[u]ntil Defendants' recovery of the *Beecham* settlement proceeds on November 17, 2008, there was no duty of restitution to Mr. Bregman" and his "unjust enrichment claim could only accrue when there were proceeds from which Mr. Bregman would have had an expectation of payment." Br. of Appellant 9. Bregman misunderstands the nature of unjust enrichment, which is based not on a contractual duty but rather "has its roots in the common law concept of quasi-contract." *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992). That is:

10

> A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, *or its equivalent*, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another.

*Jordan Keys*, 870 A.2d at 64 (second emphasis added) (quoting *Miller v. Schloss*, 218 N.Y. 400, 407 (1916)); *see also Vila*, 570 F.3d at 279–80. Although the defendant lawyers were eventually enriched by the *Beecham* settlement proceeds, they were "enriched" in the legal sense by Bregman's efforts on their behalf. Whether or not Bregman's labors got them across the goal line, he conferred a benefit on them by working to move the ball forward:

> A person confers a benefit upon another if he . . . performs services beneficial to or at the request of the other . . . or in any way adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word "benefit," therefore, denotes any form of advantage.

Restatement (First) of Restitution § 1 (1937), cmt. b; *see also id.* § 40 & cmt. d; *Bloomgarden v. Coyer*, 479 F.2d 201, 211–12 (D.C. Cir. 1973).[3]

---

[3] Bregman also relies on *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55 (Colo. App. 2011), to support

11

The Third Circuit corrected a similar misconception in *Baer v. Chase*, 392 F.3d 609 (2003). There, the plaintiff gave the defendant, the producer of the hit television series *The Sopranos*, some ideas and advice about developing the show. (As a former New Jersey prosecutor, the plaintiff was well qualified to do so.) The plaintiff thought he would be paid once the show aired but he was not paid. *Id.* at 612–14. The Third Circuit held the plaintiff's quasi-contract claim accrued when the plaintiff last rendered services to the defendant. *Id.* at 623.[4] The plaintiff argued that his claim could not accrue until the show aired because he believed remuneration for his

---

his argument that, in a case involving a contingent fee arrangement, an unjust enrichment claim cannot accrue until the fee is recovered. Even if *Hannon* were a District of Columbia case, it would not necessarily require a different result. There, several law firms had represented the plaintiffs on a contingent basis but one firm, Hannon, withdrew before the case settled. *Id.* at 57–58. Hannon sued the other firms seeking the value of its hourly services. The court held that Hannon's unjust enrichment claim accrued when the underlying case settled and the defendant firms recovered their contingent fee, not earlier when Hannon withdrew from representation (*i.e.*, last rendered services). *Id.* at 60. Significantly, however, the defendant firms' refusal to pay Hannon coincided with their recovery of the fee. *Id.* at 57–58. Here, by contrast, the three lawyers refused to pay Bregman two months before recovery of the *Beecham* settlement. Had the defendant firms in *Hannon* refused to pay Hannon *before* they received their fee, the result might have been different. Without expressing any opinion on *Hannon*'s reasoning, we think it a less helpful comparator than *Thompsen*, where the refusal to pay and the recovery fell on different dates.

[4] The District of Columbia Court of Appeals has not adopted the last rendition of services test. *See Thompsen*, 878 A.2d at 1225 n.7; *see also Vila*, 570 F.3d at 284. In *Baer*, the plaintiff was never affirmatively told that he would not be paid.

12

services was contingent upon the show's broadcast. The court rejected the argument, explaining:

> [The plaintiff] misunderstands the nature of a [quasi-contract] claim with respect to the statute of limitations. . . . [His] belief that he was going to be paid if and when the show was a success is irrelevant because his understanding of his oral contract, even if correct, does not govern his quasi-contract claim inasmuch as a quasi-contract claim is not a "real" contract based on mutual consent and understanding of the parties. The essence of a quasi-contract claim is not the expectancy of the parties, but rather the unjust enrichment of one of them. It therefore would be inappropriate to look at [the plaintiff's] expectations of payment, rather than at the services he provided [the defendant].

*Id.* (quoted approvingly in *Thompsen*, 878 A.2d at 1224).

Although Bregman's right to recover on his contractual claim—still pending in district court—may turn on the success of the *Beecham* litigation, his right of recovery on his unjust enrichment claim is based on the services he performed. *See Jordan Keys*, 870 A.2d at 64 ("[T]he claim of unjust enrichment asserted by [the plaintiff] is based on equitable principles, and it is not contingent upon the niceties of the law of contracts. Indeed, it is not a claim of breach of contract at all."). As of June 2004, he had enriched Perles, Fay and Schwarz by performing those services. The enrichment became unjust on September 25, 2008, when they refused his request for compensation. Bregman's claim therefore accrued on that date, *see Vila*, 570 F.3d at 284; *Thompsen*, 878 A.2d at 1225–26, and, accordingly, it is untimely.

13

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*